UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____:
                                :
VICTOR L. HARRIS,               :
                                :
          Plaintiff,            :   Civ. No. 12-7191 (NLH)
                                :
     v.                         :   OPINION
                                :
NEW JERSEY STATE TROOPER        :
     J.B. ZYSKOWSKI,            :
                                :
          Defendant.            :
_____:
```

APPEARANCES:
Victor L. Harris
629 Greenwood Ave.
Trenton, NJ 08609
     Plaintiff, pro se

Randy Miller
State of New Jersey Department of Law & Public Safety
25 Market St.
P.O. Box 112
Trenton, NJ 08625
     Counsel for Defendant


HILLMAN, District Judge

     This matter comes before the Court by way of a motion (ECF
No. 49) by Defendant seeking summary judgment pursuant to
Federal Rule of Civil Procedure 56.  The Court has considered
the parties' submissions and decides this matter pursuant to
Federal Rule of Civil Procedure 78.

     For the reasons that follow, Defendant's motion for summary
judgment will be GRANTED.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about November 15, 2012, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 asserting claims relating to his arrest on December 9, 2011. (ECF No. 1).  The factual allegations of the Complaint are summarized in this Court's December 18, 2013 Order.  In relevant part,

> Plaintiff alleges that on December 9, 2011, he was confined in a halfway house in anticipation of his release from service of a criminal sentence.  He signed out of the halfway house to go to a job interview.  On the way back to the halfway house, he pulled his car over on the shoulder of Interstate 295 to make a phone call.  Defendant New Jersey State Trooper J. B. Zyskowski pulled behind Plaintiff's car and asked him if he had a problem, to which Plaintiff responded that he did not.  Trooper Zyskowski then advised Plaintiff that he was not permitted to stop on the shoulder of the Interstate highway and asked Plaintiff for his driver's license and vehicle registration; Plaintiff complied with this request.
>
> Plaintiff states that Trooper Zyskowski went back to his own vehicle and then returned, asking Plaintiff to step out of his car and advising him of an outstanding 2003 warrant for Plaintiff's arrest on harassment charges.  Plaintiff replied that those charges had been dismissed, as evidenced by the fact that he had been moved from prison to a halfway house in anticipation of release.  Nevertheless, Plaintiff contends that Trooper Zyskowski responded that he was taking Plaintiff into the state police station because the warrant was on the Trooper's computer.
>
> Plaintiff asserts that, at the station, he asked Trooper Zyskowski to check the NCIC database, to show there was no pending warrant, and asked him to call the halfway house, also, to verify that no warrants were pending.  According to Plaintiff, Trooper

2

Zyskowski did run an NCIC[1] check, which showed no pending warrants, but he refused to call the halfway house, and he also refused to permit Plaintiff to place a call.  Instead, he told Plaintiff he would be sent to the Burlington County Jail and he could make a telephone call there.

Plaintiff does not allege that Trooper Zyskowski had any further involvement in the events that transpired from there, including the alleged refusal of Burlington County Jail staff to permit Plaintiff to make a telephone call, a mix-up about Plaintiff's name that permitted an inmate with a similar name to be released on bail instead of Plaintiff, and Plaintiff's confinement for approximately eight months before the charges were dropped.

(Order 2-4, December 18, 2013, ECF No. 12) (footnote omitted).

Plaintiff asserted claims against Trooper Zyskowski for false arrest, malicious prosecution, and abuse of process.

On May 23, 2013, Defendant filed a Motion to Dismiss (ECF No. 7), which the Court granted in part and denied in part on December 18, 2013 (ECF No. 12).  Specifically, only the damages

---

[1] The Court construes Plaintiff's reference to the "NCIC database" as a reference to the database maintained by the National Crime Information Center.

The National Crime Information Center is a computerized database of criminal justice information available to law enforcement agencies nationwide. It was designed to help law enforcement locate fugitives and stolen property. As such, the national index includes records on wanted persons and information on stolen property, including vehicles. Today it also contains information on missing persons, unidentified persons, people believed to pose a threat to the President, foreign fugitives, and related areas.

State v. Sloane, 193 N.J. 423, 433 (2008) (citations omitted).

claim for false arrest was permitted to proceed against Defendant, in his individual capacity; and only the claim for declaratory relief was permitted to proceed against Defendant in both his official and individual capacities.  This Court also sua sponte dismissed Plaintiff's claims for malicious prosecution and abuse of process for failure to state a claim.

On December 31, 2013, Defendant filed an Answer to the Complaint and the case progressed.  On December 4, 2014, the case was administratively terminated to afford attorney Gregg L. Zeff time to evaluate the case and decide whether he would enter an appearance on behalf of Plaintiff, who had been proceeding pro se. (ECF No. 38).  Ultimately, attorney Gregg Zeff decided to decline representation of Plaintiff.  Accordingly, on January 28, 2015, the Court reopened the case and directed that it should resume its regular course. (ECF No. 42).  Defendant now moves for Summary Judgment and asserts that he is entitled to qualified immunity as a matter of law. (ECF No. 49).

Plaintiff did not file a response.  Therefore, the motion is unopposed.

## II.   STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact." (citation omitted); see
also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n. 2
(3d Cir. 2001) ("Although the initial burden is on the summary
judgment movant to show the absence of a genuine issue of
material fact, 'the burden on the moving party may be discharged
by "showing" — that is, pointing out to the district court-that
there is an absence of evidence to support the nonmoving party's
case' when the nonmoving party bears the ultimate burden of
proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the non-moving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial. Celotex, 477
U.S. at 324.  A "party opposing summary judgment may not rest
upon the mere allegations or denials of the ... pleading[s.]"
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)
(internal quotations omitted).  For "the non-moving party[ ] to
prevail, [that party] must 'make a showing sufficient to
establish the existence of [every] element essential to that
party's case, and on which that party will bear the burden of
proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d
Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to
withstand a properly supported motion for summary judgment, the
nonmoving party must identify specific facts and affirmative

evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.

Where, as here, the motion is unopposed, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Associates v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)); see also L.Civ.R. 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion"). However, an unopposed motion may be granted only if "appropriate," and only if the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(e); see Anchorage Assocs., 922 F.2d at 175; see also Murdock v. Borough of Edgewater, No. 08-2268, 2011 WL 5320995, at *7 (D.N.J. Nov. 2, 2011).

Finally, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment should be granted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

B. 42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> ... subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress[.]"

42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).  The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806.); see also West v. Atkins, 487 U.S. 42, 48 (1988).

III. DISCUSSION

As set forth above, the only remaining claim for damages is the false arrest claim against Defendant in his individual capacity.  With respect to this claim, Defendant asserts that he is entitled to qualified immunity as a matter of law.

8

A. False Arrest

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000) (collecting cases), cert. denied, 531 U.S. 1072 and 531 U.S. 1145 (2001); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) and Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent

or those who knowingly violate the law.'" Ashcroft v. al-Kidd,
563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)
(quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89
L.Ed.2d 271 (1986)) (cited in Spady v. Bethlehem Area Sch.
Dist., 800 F.3d 633, 637 (3d Cir. 2015)).

In determining qualified immunity, the first question is
whether "the facts alleged, viewed in the light most favorable
to the party asserting the injury, show that the officer's
conduct violated a constitutional right[.]" Curley v. Klem, 298
F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S.
194, 201, 121 S.Ct. 2156, 150 L.Ed.2d 272 (2001)). Second, a
court must decide whether the right at issue was "clearly
established" at the time of defendant's alleged misconduct. See
Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172
L. Ed. 2d 565 (2009).

"To be clearly established, a right must be sufficiently
clear that every reasonable official would have understood that
what he is doing violates that right." Taylor v. Barkes, 135 S.
Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) (quoting Reichle v.
Howards, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). "In
determining whether a right has been clearly established, the
court must define the right allegedly violated at the
appropriate level of specificity." Werkheiser v. Pocono Twp.,
780 F.3d 172, 176 (3d Cir.) cert. denied sub nom. Werkheiser v.

10

Pocono Twp., Penn., 136 S. Ct. 404 (2015) (quoting Sharp v.
Johnson, 669 F.3d 144, 159 (3d Cir. 2012)).  "'We do not require
a case directly on point' before concluding that the law is
clearly established, 'but existing precedent must have placed
the statutory or constitutional question beyond debate.'"
Stanton v. Sims, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013)
(quoting al-Kidd, 131 S. Ct. at 2083).  "If officers of
reasonable competence could disagree on th[e] issue, immunity
should be recognized." Malley v. Briggs, 475 U.S. at 341.

Courts may begin their consideration with either prong. See
Spady, 800 F.3d at 637 (citing Pearson, 555 U.S. at 236).

C. Analysis

In this case, there is no dispute that Defendant arrested
Plaintiff based on the Mount Holly warrants.[2]  Moreover,
according to Plaintiff's version of the facts, the case which
had produced the Mount Holly warrants had been dismissed and
Plaintiff did not have any outstanding warrants at the time of
his arrest. (Compl. 2, ECF No. 1).  In viewing the facts in the
light most favorable to Plaintiff under the summary judgment

---

[2] Plaintiff does not dispute the fact that Defendant relied on
the Mount Holly warrants to arrest him.  Although Plaintiff
ultimately alleges that Defendant "knew there was no warrant"
(Compl. 5, ECF No. 1), Plaintiff previously concedes that
Defendant "stated that [he had] a warrant from back in 2003 for
harassment" (Compl. 2, ECF No. 1).

standard and the first prong of the qualified immunity analysis, see Gilles, 427 F.3d at 205, the Court accepts as true Plaintiff's assertion that the warrants were not active at the time of Plaintiff's arrest.[3]

However, Defendant contends that, at the time of the arrest, he received verbal confirmation from a fellow officer that the two warrants were active.  Further, after Defendant took Plaintiff to the station, Defendant personally confirmed the existence of the warrants and printed copies, which are attached to his motion. (Exhibits Part II 28-30, Ex. F, Warrants, ECF No. 49-3).  Indeed, the attachments show that these copies were printed on December 9, 2011, the day of Plaintiff's arrest, and they do not provide any indication that the underlying case had been dismissed or that the warrants themselves had been vacated. (Id.).

---

[3] The parties do not fully explain why, how, when, or if the warrants at issue were vacated or otherwise rendered inactive. Plaintiff simply states, "that case was dismiss[ed]." (Compl. 2, ECF No. 1). Nevertheless, Defendant does not dispute that the warrants which served as the basis for Plaintiff's arrest were not active at the time of the arrest.  Because Defendant has not met his initial burden of challenging the assertion that the warrants had been vacated or rendered inactive at the time of the arrest, Plaintiff — as the non-moving party — is not required to go beyond the pleadings to show that there is a genuine issue for trial. See Celotex, 477 U.S. at 323, 324 (the moving party bears the burden of demonstrating the absence of a genuine issue of material fact).

As set forth above, Plaintiff has not responded to the
summary judgment motion, has not provided any documentation in
support of his Complaint, and has not disputed any of
Defendant's asserted facts.  Therefore, the Court accepts
Defendant's contention that, at the time of the arrest, the
computer system indicated that the Mount Holly warrants were
active.  See Anchorage Assoc., 922 F.2d at 175 (holding that the
Court "will accept as true all material facts set forth by the
moving party with appropriate record support"); see also
L.Civ.R. 56.1(a) ("any material fact not disputed shall be
deemed undisputed for purposes of the summary judgment motion").

Accordingly, the facts of this case for purposes of this
summary judgment motion are that Defendant arrested Plaintiff
based on two warrants which, as Plaintiff alleges, had already
been vacated or otherwise rendered inactive but which, as
Defendant alleges, were registered as active in a police
computer database.  Therefore, the qualified immunity analysis,
infra, turns on whether an officer is unreasonable in his belief
that probable cause to arrest exists where a search of a police
computer database returns an active warrant, but the suspect
verbally alleges that no such warrant exists.  See Michtavi v.
Scism, No. 14-4104, 2015 WL 8595201, at *2 (3d Cir. Oct. 19,
2015) (holding that the particular circumstances of the case
warrant a specific definition of the right at issue); see also

13

Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997) (citing

Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir.

1995)) ("The Fourth Amendment prohibits a police officer from

arresting a citizen except upon probable cause.").

       1. False Arrest Claims against Defendant in his

          Individual Capacity

    In his motion, Defendant asserts that he is entitled to

qualified immunity as a matter of law.  In determining whether a

defendant is entitled to qualified immunity in the context of a

claim of false arrest, the Court must determine whether, given

the circumstances of the case, "'a reasonable officer could have

believed that probable cause existed to arrest' the plaintiff."

Ciardiello v. Sexton, 390 F. App'x 193, 199 (3d Cir. 2010)

(quoting Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116

L.Ed.2d 589 (1991)); Franks v. Temple Univ., 514 F. App'x 117,

121 (3d Cir. 2013); see also Gilles, 427 F.3d at 205 ("Under the

second step of the analysis, a police officer is entitled to

qualified immunity unless it would have been clear to a

reasonable officer there was no probable cause to arrest.")

(citations omitted).

    Probable cause exists "whenever reasonably trustworthy

information or circumstances within a police officer's knowledge

are sufficient to warrant a person of reasonable caution to

conclude that an offense has been committed by the person being

arrested." <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir.
2002) (citing <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964));
<u>see also</u> <u>DiStefano v. Macy's Retail Holdings, Inc.</u>, No. 14-2078,
2015 WL 5049825, at *2 (3d Cir. Aug. 27, 2015).

As this Court noted in its December 18, 2013 Order, courts
"have generally extended immunity to an officer who makes an
arrest based on an objectively reasonable belief that there is a
valid warrant." <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 273
(3d Cir. 2000) (citing <u>Rogers v. Powell</u>, 120 F.3d 446, 456 (3d
Cir. 1997) (concluding that a state trooper who was inaccurately
told by another trooper that there was a warrant for the
plaintiff's arrest was immune from suit) and <u>Capone v.
Marinelli</u>, 868 F.2d 102, 105-06 (3d Cir. 1989) (holding that
arresting officers were immune in light of a bulletin correctly
reporting the existence of an arrest warrant "as well as the
nature of the alleged offenses [including child kidnaping] and
the fact that a young child was in possible danger")).

Previously, this Court declined to apply qualified immunity
because, according to the allegations of the Complaint,
Defendant was in possession of "conflicting information
regarding the existence of the warrant from two different law
enforcement computerized databases[.]" (Order 13, Dec. 18, 2013,
ECF No. 1).  Specifically, this Court found that it could not
make a determination as to the reasonableness of Defendant's

actions when the allegations of the Complaint stated that
Defendant's search of the NCIC database did not reveal any
warrants.

However, as established in Defendant's Statement of
Material Facts, "[t]he New Jersey State Police check for
warrants in three separate databases: the NCIC, or National
Crime Information Center data base; the ATS, or Automated
Traffic System data base; and the ACS, or Automated Crime System
date base." (Def.'s SOMF, ¶ 45).  Additionally, "[u]nder normal
circumstances, a Trooper would only expect to see a warrant in
one of these three databases" because "each database tracks
different kinds of warrants." (Def.'s SOMF, ¶¶ 46 & 47).

Defendant further explains that the ATS and ACS systems
"track warrants issued by local municipal courts" and "are not
generally put into the NCIC system at all." (Def.'s SOMF, ¶¶ 48,
51).  Accordingly, the fact that a warrant issued by a municipal
court does not appear in the NCIC system would not give a
reasonable officer cause to challenge the validity of that
warrant. (Def.'s SOMF, ¶ 56).

Here, that is precisely the scenario presented.  Defendant
received verbal confirmation from dispatch of two active
warrants which appeared in the ACS database.  Accordingly, he
arrested Plaintiff and returned to the station.  Once there, he
personally verified the existence and active status of those

warrants.  As Plaintiff alleges, Defendant's search of the NCIC
database did not return any active warrants for Plaintiff.
However, as explained above, the active warrants were issued by
a municipal court; therefore they could reasonably be expected
to appear only in the ACS database.  As a result, their absence
from the NCIC database would not have caused a reasonable
officer to conclude that there was no probable cause to arrest.

Also, this Court previously noted that the Complaint
alleged that Plaintiff suggested to Defendant that he contact
Plaintiff's halfway house to verify the fact that there were no
outstanding warrants for his arrest.  However, as Defendant
explains, the statements or records of an out-of-state halfway
house could not have verified or refuted the existence of a New
Jersey warrant. (Def.'s SOMF, ¶ 65).  Even more compelling is
the fact that the active warrants required Plaintiff to be
brought before the Mount Holly Municipal Court or to be held on
bail in the amount set by the warrant. (Exhibits Part II 29-30,
Def.'s Ex. F, Warrants, ECF No. 49-3).  Therefore, the
statements or records of an out-of-state halfway house could not
have changed the status of the warrants, altered the bail
requirement, or otherwise relieved an arresting officer of the
obligation to arrest Plaintiff.  Accordingly, even accepting as
true Plaintiff's allegation that he informed Defendant that he
was currently in a halfway house and that he requested that

Defendant call the halfway house, a reasonable officer would not be compelled to make such a call; nor would such an allegation cause a reasonable officer to conclude that there was no probable cause to arrest.

Further, the Court notes that Plaintiff's allegation that he told Defendant that the case which gave rise to the warrants was dismissed and that Plaintiff was currently in a halfway house (Compl. 2, ECF No. 1) is unsupported by the record. The Court has reviewed the video footage of the traffic stop. At no time during the arrest did Plaintiff mention that he is currently in a halfway house. Moreover, the video footage reveals that Plaintiff did not inform Defendant that the case which gave rise to the Mount Holly warrants was dismissed, as alleged in the Complaint. Rather, in the video footage, Plaintiff denies ever being present in Mount Holly. Accordingly, the Court finds that Plaintiff was untruthful about the existence of the warrants and about the information he relayed to Defendant during the traffic stop. See Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

This Court concludes that, given the appearance of two active warrants in the ACS database, a reasonable officer could have believed that probable cause existed to arrest Plaintiff. See Hunter, 502 U.S. at 228); Ciardiello, 390 F. App'x at 199; Gilles, 427 F.3d at 205.  Accordingly, Defendant is entitled to qualified immunity. See Berg, 219 F.3d at 273; Capone, 868 F.2d 102.

     2. <u>Claims for declaratory relief against Defendant in his Individual Capacity</u>

Because, as set forth above, the Court finds that Defendant is entitled to qualified immunity, any claims for declaratory relief against Defendant in his individual capacity must be dismissed.

     3. <u>Claims for declaratory relief against Defendant in his Official Capacity</u>

Plaintiff also seeks a declaration that "the acts and omissions described [in the Complaint] violated plaintiff[']s rights under the [C]onstitution and the laws of the United States." (Compl. 6, ECF No. 1).  Per the Court's December 18, 2014 Order, Plaintiff's claim for declaratory relief against Defendant in his official capacity was allowed to proceed. (Order 9-10, 18, ECF No. 12).  As previously explained, a claim for declaratory relief against an official in their official capacity is not barred by the Eleventh Amendment. See <u>Will v.</u>

Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106, 87 L. Ed. 2d 114 (1985)) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"); Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)); see also Balgowan v. New Jersey, 115 F.3d 214, 218 (3d Cir. 1997) (holding that suit for declaratory relief against state officer under Fair Labor Standards Act is permissible under Young); Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981) (holding that Eleventh Amendment does not bar a suit seeking declaratory or injunctive relief against a state official acting in in his official capacity).

Defendant does not specifically address Plaintiff's claim for declaratory relief in his Motion for Summary Judgment. Instead, Defendant's motion focuses on his entitlement to qualified immunity and, as explained above, this Court finds that he is so entitled. However, although Defendant's motion seeks dismissal of Plaintiff's Complaint in its entirety — and, thus, all of Plaintiff's claims — qualified immunity applies only to officials sued in their individual capacities. See Saucier, 533 U.S. at 201. Therefore, the Court's determination

20

that Defendant is entitled to qualified immunity on Plaintiff's false arrest claim does nothing to resolve Plaintiff's claim for declaratory relief against Defendant in his official capacity.

Because Defendant has not sought summary judgment on this specific claim, and because the Court finds that summary judgment is not appropriate based on the current record, Defendant is not entitled to judgment as a matter of law on Plaintiff's claim for declaratory relief against Defendant in his official capacity. See FED. R. CIV. P. 56(e).

IV.   CONCLUSION

For the foregoing reasons, Defendant is entitled to qualified immunity on the claims against him in his individual capacity.  Accordingly, the Court will grant Defendant's request for summary judgment as to Plaintiff's false arrest claim against Defendant in his individual capacity.  As a result, Plaintiff's claim for declaratory relief against Defendant in his individual capacity is dismissed.  However, summary judgment is not appropriate with respect to Plaintiff's claim for declaratory relief against Defendant in his official capacity.

An appropriate Order follows.

__s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: March 28, 2016
At Camden, New Jersey